**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfredo MOYA, Defendant-Appellant.**

**No. 83–1147.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1983.

Decided Nov. 18, 1983.

Certiorari Denied Feb. 21, 1984.

See 104 S.Ct. 1312.

---

Carol A. Brook, Federal Defender Prog., Chicago, Ill., for defendant-appellant.

Scott Turow, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the defendant's conviction for conspiracy to possess with intent to distribute cocaine and conspiracy to distribute cocaine (Count I), for distribution of cocaine (Count II), and for possession with intent to distribute cocaine (Count III). For the reasons set forth below, we affirm the conviction.

In July and August of 1982, Richard Romanello, a confidential drug informant for the Drug Enforcement Administration (DEA) worked with DEA Agent Raleigh Lopez ostensibly to purchase cocaine from a woman named Stacy Horn, who lived in New Orleans. Horn contacted a man named Darryl Joseph, who arranged for the cocaine to be driven to Chicago from Miami by Maria Mendoza, a source of illegal drugs. In the early morning of August 10, 1982, Horn arrived in Chicago with a sample of cocaine and checked into the O'Hare Hilton. Joseph arrived later in the day and checked into the same hotel. Throughout the day, Romanello and Agent Lopez phoned Horn to inquire about the arrival of the cocaine from Florida. Horn informed them that two Latin females, one Latin male, and two young children were coming from Florida in a vehicle.

At approximately 1:10 a.m. on the morning of October 11, 1983, the defendant, his wife and child, Maria Mendoza, and Mendoza's child arrived in a car at the O'Hare Hilton parking lot. The defendant carried a red and white box, identified by a surveillance agent as a "Huggies" disposable diapers box, into the hotel, while the rest of the luggage was taken into the hotel on a cart pulled by a bell captain. Mendoza and her child checked into room 9003, and the Moyas checked into room 9007. Shortly thereafter, Joseph contacted Horn and told her that the people from Florida had arrived. When Agent Lopez called Horn ap-

proximately five minutes later, Horn told him to come to her room. Horn then went to Mendoza's room, and when Joseph arrived, Mendoza left to get a sample of cocaine. Mendoza returned about five minutes later with a man's shaving kit that contained cocaine. Horn took part of the sample and returned to her room, where DEA Agents Lopez and Vanacora, posing as purchasers of cocaine, were waiting. After Horn handed the sample of cocaine to the agents, Joseph arrived, and an agreement was reached whereby the agents would advance some of the purchase price if they were shown a portion of the total amount of cocaine. Joseph left and, a few minutes later, called Horn, who told Agent Lopez to wait for Joseph by the fifth floor elevators. At the elevators, Joseph met Agent Lopez and produced a shaving kit containing a white substance that Joseph identified as twenty ounces of cocaine. Agent Lopez arrested Joseph, and both agents then arrested Horn, who stated that she wished to cooperate with the DEA.

After speaking with Horn and learning the name and location of the source, Agents Lopez and Vanacora, along with several backup agents, went to room 9003 and arrested Mendoza, who also offered to cooperate and told the agents that the rest of the cocaine was in room 9007. Proceeding to room 9007, the agents knocked on the door several times and were answered by the defendant.[1] The agents identified themselves, and the defendant consented to a search of the room.[2] During the course of the search, the agents brought Mendoza into the defendant's room, at which point the defendant stated that he knew nothing about drugs and that he merely drove Mendoza from Florida to Chicago. Agent Lopez then read the defendant his *Miranda* rights and asked Mendoza where the cocaine was. Mendoza walked to a dresser, picked up a

box of "Huggies" disposable diapers,[3] and told the defendant in Spanish that she was going to tell the agents where the cocaine was. The defendant tried to dissuade Mendoza, although there is conflicting testimony as to the defendant's exact words. Mendoza replied in Spanish "I have to do it," and she handed Agent Lopez the box of diapers, which contained about one kilogram of cocaine.

At the defendant's bench trial, the defendant testified that Mendoza had asked him and his family to drive her to Chicago, where she was to meet her boyfriend, Darryl Joseph, in order to attempt to restore their relationship. The defendant said that he and his family once drove Mendoza to New Orleans to pick up Joseph's car. According to the defendant, he and his wife considered the Chicago trip and the earlier New Orleans trip as expense-free vacations. The trial court indicated that the defendant's version of the events was "just unbelievable," Trial Transcript at 689, and the court found the defendant guilty on all three counts of the indictment.

In appealing his conviction, the defendant argues that there is insufficient evidence to find him guilty beyond a reasonable doubt. The defendant asserts that the test in this circuit for reviewing the sufficiency of the evidence is whether the trier of fact could reasonably conclude that the evidence is inconsistent with the defendant's hypothesis of innocence ("hypothesis of innocence test"). The defendant bases this assertion on three cases decided by this court: *United States v. Weed*, 689 F.2d 752, 756 (7th Cir. 1982); *United States v. Beck*, 615 F.2d 441, 448 (7th Cir.1980); *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir.1978). According to the defendant, each of these cases approved the hypothesis of innocence test, which the Fifth Circuit had developed in

---

1. The defendant and his wife testified that Mrs. Moya answered the door after the first knock. Trial Transcript at 463, 587–88.

2. The defendant and his wife testified that the agents first entered the room and then identified themselves. Trial Transcript at 464–65, 588.

3. According to the defendant and his wife, Mendoza picked up a diaper box that was in Mendoza's luggage, which had been deposited by the bell captain on the floor of room 9007. Trial Transcript at 473, 592.

*United States v. Lonsdale,* 577 F.2d 923, 925 (5th Cir.1978). The defendant further states that this test is more precise than the more general question of whether the trier of fact could reasonably find the defendant guilty beyond a reasonable doubt ("reasonable doubt test"). As explained by the defendant, the hypothesis of innocence test illuminates the element of reasonable doubt—if the jury could not reasonably conclude that the evidence is inconsistent with the hypothesis of innocence, it must necessarily entertain a reasonable doubt. Using the hypothesis that he unknowingly transported cocaine when he embarked on what he regarded as an expense-free vacation, the defendant argues that the evidence presented at trial was not in any way inconsistent with this hypothesis. He supports this argument with references to Fifth Circuit cases employing the hypothesis of innocence test. As apparently alternative support, the defendant points to cases from the Seventh and Ninth Circuits that employed the reasonable doubt test, and he states that the courts in these cases found even stronger evidence than that shown in the present case to be insufficient to uphold a guilty verdict.

The United States disagrees that the hypothesis of innocence test is the proper standard for reviewing whether the evidence is sufficient to support a criminal conviction. According to the government, this court in *Fearn* inadvertently resurrected a test that originally was intended to weigh circumstantial evidence and that specifically was rejected by the United States Supreme Court in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Furthermore, the government informs this court that the Fifth Circuit repudiated the hypothesis of innocence test in *United States v. Bell,* 678 F.2d 547 (5th Cir.1982), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The government also contends that the Seventh Circuit has retreated from the hypothesis of innocence test, and it refers this

court to a number of recent cases where this court applied only the reasonable doubt test when reviewing the sufficiency of evidence to support criminal convictions.[4] Finally, the United States argues that there are many analytical flaws with the hypothesis of innocence test. Applying the traditional reasonable doubt test, the government asserts that the decision of the district court is supported by substantial evidence and that the conviction should be affirmed. In his reply brief, the defendant argues that the United States Supreme Court in *Holland* merely rejected the claim that the trial court should have instructed the jury that circumstantial evidence must exclude every reasonable hypothesis other than that of guilt. Since the need for an instruction regarding the meaning of circumstantial evidence is a different issue than the validity of the hypothesis of innocence test that is used to review the sufficiency of all the evidence in a criminal case, the defendant maintains that the Fifth Circuit erred in relying on *Holland* to overrule the hypothesis of innocence test.

■ It is clear from Seventh Circuit precedent that this court has never abandoned the reasonable doubt test when reviewing the sufficiency of evidence in criminal cases. In each of the three cases where this court had occasion to mention the hypothesis of innocence test, the court also outlined and specifically applied the reasonable doubt test. *See United States v. Weed,* 689 F.2d at 756–57; *United States v. Beck,* 615 F.2d at 447–48; *United States v. Fearn,* 589 F.2d at 1321, 1326. Thus, the references to the hypothesis of innocence test were dicta. Furthermore, an analysis of the two tests reveals that they cannot be regarded as equivalent.

■ In every criminal trial, each party asks the trier of fact to believe its witnesses, to weigh its evidence more heavily than the opposition's evidence, and to draw certain inferences from the basic facts in evi-

---

4. *See United States v. Brown,* 716 F.2d 457 at 460 (7th Cir.1983); *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983); *United States* *v. Jefferson,* 714 F.2d 689, 699 (7th Cir.1983); *United States v. Knop,* 701 F.2d 670, 675 (7th Cir.1983).

dence in order to accept its hypothesis regarding the events in dispute. When a defendant is found guilty, "the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). This leads to the reasonable doubt test, under which the reviewing court in a criminal case must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original). Thus, it follows that when the factfinder is asked to draw conflicting inferences from the facts in evidence in order to choose between conflicting hypotheses, the reasonable doubt test requires the reviewing court to consider the evidence according to the prosecution's inferences. The hypothesis of innocence test, on the other hand, requires the reviewing court to put aside the prosecution's inferences and to determine whether the trier of fact could reasonably conclude that the evidence is inconsistent with the defendant's hypothesis. It is therefore clear that the two tests are not equivalent, and only one of them should provide the appropriate standard of review. Relying on the United States Supreme Court's discussion in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), we reaffirm our commitment to the reasonable doubt test as the sole test for reviewing the sufficiency of the evidence in criminal cases.[5]

■ Applying the reasonable doubt test to the present case, we have considered the evidence in the light most favorable to the prosecution, and we find that any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Accordingly, the conviction is affirmed.

---

**5.** Since our holding is based solely on Seventh Circuit and Supreme Court precedent, we need not decide whether the Fifth Circuit was incor-

rect in its analysis in *United States v. Bell,* 678 F.2d 547 (5th Cir.1982).