**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rose GIANGROSSO,
Defendant-Appellant.**

No. 84–2697.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1985.

Decided Dec. 13, 1985.

As Amended Jan. 21, 1986.

Steven Miller, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Suzanne Philbrick, Oak Lawn, Ill., for defendant-appellant.

CUDAHY and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

COFFEY, Circuit Judge.

The appellant, Rose Giangrosso, was convicted of conspiring to possess and distribute cocaine in violation of 21 U.S.C. § 846 and unlawful use of communication facilities to facilitate a drug transaction in violation of 21 U.S.C. § 843(b).[1] Giangrosso was sentenced to eighteen months imprisonment for violating section 846 to be followed by a probationary term of five years for violating section 843(b). We affirm.

I

The record reveals that the government, pursuant to a valid court order, recorded the phone conversations originating from the telephone line of a Pam Fernandez, the girlfriend of Lenny Kucala who was the subject of a drug investigation, for a thirty-day period from August 5 to September 4, 1983. During this period, Lenny Kucala placed several calls from Fernandez's home located at 2515 West 70th Street in Chicago to Rose Giangrosso in Fort Lauderdale, Florida. At trial, defense counsel stipulated that Giangrosso was properly identified as one of the participants to these conversations, and that the transcripts of these conversations were accurate. During several conversations recorded on August 13 and 14, 1983, Lenny Kucala and Giangrosso discussed an exchange of money. On August 15, 1983, three conversations took place. During the first conversation Kucala informed Giangrosso that "a three and a five's coming." After this comment, the following conversation took place:

"Kucala: You know, you know where your, your nephews at?
Giangrosso: Uh huh
Giangrosso: Yeah I know
Kucala: Okay. Okay. Seventy-three fifteen."

Immediately thereafter, a Western Union wire transfer of $5,300 was sent to Giangrosso in Fort Lauderdale, Florida from Chicago. Later that day, Lenny Kucala called to determine if Giangrosso received the cash.

"Kucala: Did you get it?
Giangrosso: Yes
Kucala: How much?
Giangrosso: Fifty-three
Kucala: Can you talk
Giangrosso: No."

On August 16, 1983, the following day, a one pound Express Mail package with a Florida return address was delivered to Terry Kucala, the son of Lenny Kucala, at 7315 South California Avenue, Chicago, Illinois. Terry Kucala lived at this address with his mother. Officer Cummings, a Chi-

---

**1.** A co-defendant at trial, Terry Kucala, was indicted along with Giangrosso for conspiring to distribute cocaine and for unlawful use of a communication facility to facilitate a drug transaction. He was acquitted of these charges.

cago police officer who had staked out the house, observed Terry Kucala wait out in front of the house for approximately ninety minutes before the package arrived. During this time he noticed Kucala pacing intermittently between the porch of the house and the sidewalk, and looking up and down the street. After receiving the package, Terry Kucala drove to Pam Fernandez's home, previously referred to as the location where the phone conversations were recorded. After a conversation with a person at the door, he then proceeded to a house located at 6617 West 63rd Place, entered a truck parked in an alley behind the house and removed a package. He entered and subsequently exited the house and returned to Pam Fernandez's house with the package.

The wire intercepts reveal that on September 2, 1983, Lenny Kucala again called Giangrosso who spoke about waiting "until tomorrow" to deliver something to an unidentified third party. The next day, Saturday, September 3, Giangrosso, while speaking with Kucala on the phone, stated that she assumed "he [Kucala] would want it to be there on Tuesday" and that the address for the delivery was "7315." Pursuant to a validly executed search warrant, the DEA intercepted a package sent from Fort Lauderdale to Chicago and inspected its contents. It was discovered that this package contained 943 grams of 94% pure cocaine. The Express Mail label on the package stated that the package was to be delivered to 7315 South California Avenue, Chicago, Illinois. The label also noted that the package was delivered to the Fort Lauderdale Post Office at 10:15 a.m. on September 3, 1983, approximately one hour after the recorded conversation between Giangrosso and Lenny Kucala took place. After the package was inspected and rewrapped, it was forwarded routinely to the 7315 South California Avenue address on September 6th. That same day a search warrant was obtained for the cocaine at this address, the residence was searched, and the cocaine was seized from a rear bedroom. Rose Giangrosso was subsequently arrested in Florida and charged with conspiring to deliver cocaine and unlawful use of a communication facility to facilitate a drug transaction.

On appeal, Giangrosso claims that she was denied effective assistance of counsel at trial and that the evidence submitted was insufficient to support her conviction.

## II

Giangrosso complains that her trial counsel committed five errors during the course of the trial that deprived her of her Sixth Amendment right to effective assistance of counsel:

1. That her counsel failed to file a motion with the court, pursuant to Fed. R.Crim.P. Rule 14, for a trial separate from co-defendant Terry Kucala;

2. That her counsel improperly stipulated that the transcripts of the recorded telephone conversations properly identified her as one of the speakers;

3. That her counsel improperly allowed the government to reopen its case for the purpose of admitting in evidence a stipulation that Giangrosso was the person who picked up the Western Union wire transfer money order in Florida on August 15, 1983;

4. That her counsel failed to request that the court give a limiting instruction to the effect that Officer Cummings' testimony concerning his observations of the movements of Terry Kucala outside the 7315 South California address should not be used as evidence of guilt against Giangrosso;

5. That her counsel failed to produce any character witnesses on Giangrosso's behalf even though she had never previously been arrested.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), recently set forth the standards for evaluating whether or not the defendant has been deprived of effective assistance of counsel. The analysis involves two steps.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* 104 S.Ct. at 2064. In *United States v. Noble*, 754 F.2d 1324 (7th Cir.1985), we stated:

"Under the first prong of the analysis, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness'.... This showing includes identifying 'the acts or omissions of counsel that are alleged not to have been the results of reasonable and professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' ... The second prong of the analysis requires that the defendant 'affirmatively prove prejudice.' ... This requires that 'there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' ... In setting out this two pronged analysis the *Strickland* Court noted that 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.' "

*Id.* at 1355 (quoting *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2065–67). We now turn to defense counsel's alleged errors at trial to determine if Giangrosso was deprived of effective assistance of counsel.

■ Giangrosso initially claims that she was denied effective assistance of counsel when her attorney failed to file a motion requesting a separate trial from Terry Kucala. Specifically, she alleges that had her trial been severed from Kucala's trial, Kucala could have presented exculpatory testimony in her behalf that the first package shipped to Chicago, which was never retrieved by the police, did not contain cocaine.

Terry Kucala, Giangrosso and others were charged with conspiring to deliver cocaine. "The general rule is that persons jointly indicted together should be tried together, especially in conspiracy cases." *United States v. Madison*, 689 F.2d 1300, 1305 (7th Cir.1982). This circuit has expressed "a strong policy in favor of joint trials where the charge against all defendants may be proved by the same evidence and results from the same acts." *United States v. Ras*, 713 F.2d 311, 315 (7th Cir. 1983); *United States v. Burton*, 724 F.2d 1283, 1286–87 (7th Cir.1984). In such a situation, separate trials are not favored and the defendant bears the burden of demonstrating prejudice from joinder with other defendants. Thus, the defendant must demonstrate "more than the fact that a separate trial offer[s] ... a better chance for acquittal." *Ras*, 713 F.2d at 315 (citing *United States v. Tanner*, 471 F.2d 128, 137 (7th Cir.1972)). The speculative possibility that a co-defendant may testify for another defendant, if the trial is severed, is insufficient to establish the requisite prejudice justifying severance. *United States v. Duzac*, 622 F.2d 911, 912 (5th Cir.1980). In this case, Giangrosso merely speculates that Terry Kucala "would have" testified that the August 16 package did not contain cocaine and thus she has failed to demonstrate any prejudice from the failure of her attorney to file a motion for a separate trial. Further, assuming that Giangrosso's attorney had made the appropriate motion and the trial had been severed, we are unable to discover anything in the record that substantiates Giangrosso's belief that Terry Kucala would have testified that the package he received from Florida on August 15th did not contain cocaine. Terry Kucala was the courier for the shipments

once they arrived in Chicago and his defense at trial was that he did not know that the packages contained cocaine. The jury obviously believed his defense since he was acquitted of all charges. If the trial had been severed, and had Giangrosso been tried first, it is unlikely that Kucala would have testified that the August 15 shipment did not contain cocaine since this would have destroyed his own defense that he was unaware of the contents of the packages.[2] Thus, Giangrosso's argument that she was prejudiced by her defense counsel's failure to file a motion for a separate trial is without basis in the record and is mere speculation at best.

■ Giangrosso next contends that she was denied effective assistance of counsel when her attorney stipulated that the transcript of the telephone conversation properly identified her as one of the speakers. She also asserts that she was denied effective assistance of counsel when her attorney allowed the prosecution to reopen its case for the purpose of admitting another stipulation that Giangrosso was the person who picked up the Western Union money order in Fort Lauderdale, Florida, on August 15, 1983. The Supreme Court's decision in *Strickland* makes the law eminently clear that the judgments of trial counsel involving strategic decisions made at trial will not be considered as a proper basis for bringing a Sixth Amendment ineffective assistance of counsel claim. *See Strickland,* 366 U.S. at ——, 104 S.Ct. at 2065–66; *United States ex rel. Huckstead v. Greer,* 737 F.2d 673, 676 (7th Cir.1984). In this case, Giangrosso's counsel presented a defense that the conversations between Lenny Kucala and Giangrosso related to gambling debts and not to cocaine. (Tr. 125–138, 213). This defense trial strategy was appropriate when one considers that the recorded conversations involved discussions of money and not cocaine. Further, the amount of money discussed during the conversations, $5,300, was well below the

wholesale market price of the cocaine seized in one of the shipments, thus lending at least to an aura of credibility to this defense. Thus, it would have been inconsistent for her counsel to argue to the jury that Giangrosso was not the person on the phone and then argue that the conversations, which she would have had no knowledge of unless she herself "tapped" the phone line, related solely to gambling and not cocaine. Clearly, the defense counsel's decision to stipulate that Giangrosso was the person on the phone was a well conceived strategic trial tactic and thus provides no support for a claim of ineffective assistance of counsel.

■ Similarly, defense counsel's decision to allow the government to reopen its case in order for the government to enter into the record a stipulation that Rose Giangrosso was the person who picked up the wire transfer money order on August 15 was also a strategic trial tactic. At trial, defense counsel sought to introduce a taped telephone conversation, between Lenny Kucala and an unidentified third party concerning a gambling debt, that occurred on the same day Kucala spoke with Giangrosso. The government objected to this conversation on the grounds that it was hearsay. This conversation was critical to Giangrosso's defense that her conversations with Lenny Kucala related to gambling debts. The record discloses that the defense agreed not to object to the government's being allowed to reopen its case in order to submit a stipulation in evidence that Giangrosso was the person who signed for the money order on August 15, 1983 (which did not detract from her defense that her conversations with Kucala related to a gambling debt). In exchange, the government agreed to withdraw its objection to the evidence of the conversation between Lenny Kucala and the third party concerning a gambling debt. Thus, Giangrosso's claim that she was denied effective assistance of counsel when her attorney

---

**2.** Further, even if he would have testified that the August 15 shipment did not contain cocaine, his testimony would not explain the cocaine

concealed in the second package seized by the government on September 6, en route from Florida to Chicago.

allowed the government to reopen its case and introduce the stipulation that Giangrosso was the person who signed for the money order in Florida is without merit.

 Giangrosso also claims that she was denied effective assistance of counsel when her attorney failed to introduce a character witness on her behalf. She, however, has failed to specify or bring to this court's attention the names of any witnesses who should have been called to testify and what that person or persons could have or would have related about her character. Thus, Giangrosso has failed to establish how she was prejudiced by her attorney's failure to call a character witness. *See, e.g., United States v. Metcalfe,* 698 F.2d 877, 883 (7th Cir.1983); *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir.1978). Finally, Giangrosso contends that her counsel erred when he failed to request a limited instruction to the effect that Officer Cummings' testimony should be considered only as against Terry Kucala. Officer Cummings testified that on August 16, he observed Terry Kucala carefully scrutinize the area in front of the house located at 7315 South California Avenue while he waited for the delivery of the package from Florida. This evidence was admissible against Giangrosso as circumstantial evidence that the package sent to Chicago from Florida, immediately after the government recorded telephonic conversation with Lenny Kucala, contained illegal contraband. Thus, Giangrosso was not denied effective assistance of counsel when her attorney failed to request a limited instruction since the evidence was admissible against Giangrosso.[3]

### III

Giangrosso's final contention is that the evidence is insufficient to sustain the jury's verdict of guilt on Counts I, II and III. Count II of the indictment charged that Giangrosso knowingly and intentionally, used "a communication facility" on August 15, 1983, to facilitate "the conspiracy to distribute and possess with intent to distribute cocaine ..." in violation of 21 U.S.C. § 843(b). Giangrosso argues that the August 15 conversation does not refer to cocaine and that there is no proof that the package delivered to Terry Kucala on the following day, which the police never retrieved, contained cocaine. Thus she contends that her conviction under Count II must be reversed. Count III of the indictment charged that Giangrosso knowingly and intentionally used "a communication facility" on September 3, 1983, to facilitate "the conspiracy to distribute and possess with intent to distribute cocaine...." Giangrosso contends that although cocaine was seized from the package delivered to Terry Kucala at the 7315 South California Avenue address on September 6, there is no evidence linking her to the package of cocaine, and thus her conviction under Count III must also be reversed. Finally, Giangrosso contends that since there was no evidence linking her to the cocaine, her conviction for conspiring to distribute cocaine under Count I cannot be sustained.

It is well-established that our standard for reviewing the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendants guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983). We turn to the evidence adduced at trial.

 Since the police were unable to recover the September 6th shipment of cocaine from Florida to Chicago, we initially assess the evidence affecting Count III of the indictment charging Giangrosso with intentionally using a communication facility with intent to distribute cocaine. The

**3.** Giangrosso also argues that the district court erred in admitting the taped conversations between herself and Lenny Kucala since these conversations were not properly authenticated, pursuant to Fed.R.Evid. 901, prior to their ad-

mission in evidence. This contention likewise is without merit at Giangrosso's attorney, in the exercise of sound trial strategy, stipulated that it was her voice on the tapes of the phone conversations.

record reveals that on September 3, 1983, an Express Mail package was sent from the Fort Lauderdale, Florida Post Office to a "J. Kucala" at 7315 South California Avenue, Chicago, Illinois. The package contained 943 grams of 94% pure cocaine. The telephone calls between Giangrosso and Lenny Kucala that preceded this delivery established that on September 2, the day prior to the shipment of the cocaine from Florida, Giangrosso informed Kucala that she would wait "until tomorrow" to "take care of it" and that "the office," supposedly the Post Office, was "only open till twelve tomorrow." The next day, September 3, 1983, was a Saturday. On September 3, Giangrosso again spoke with Kucala and told him that "the office is open this morning" and that she assumed Kucala would "want it to be there on Tuesday." [4] She also informed Kucala that the number on the package was "7315." One hour after this conversation, a package containing cocaine with the address 7315 South California Avenue, Chicago, Illinois, was delivered to the Fort Lauderdale Post Office. This package arrived in Chicago on Tuesday, September 6, 1983. The timing of the phone conversations and the discussion of the address immediately preceding the delivery of the cocaine to the Post Office is persuasive evidence linking Giangrosso to the cocaine delivery. Thus, there is more than sufficient evidence to sustain Giangrosso's conviction on Count III.

■ Although the police were unable to recover the August 16th shipment of cocaine from Florida to Chicago, since Giangrosso was linked to the September 6th delivery of cocaine to the 7315 South California Avenue address in Chicago, Illinois, the jury could infer that the August 16, 1983 shipment also contained cocaine as this delivery followed the same pattern as the September 6th delivery. Immediately prior to the September 6th Express Mail cocaine shipment of a package from Fort Lauderdale to Chicago, Kucala and Giangrosso engaged in a phone conversation concern-

ing this delivery where they spoke in a guarded fashion. The August 16th shipment followed a similar pattern and the circumstances surrounding this shipment were admitted at trial as circumstantial evidence that this package also contained cocaine. Specifically, immediately preceding the August 16, 1983 delivery of the Express Mail package to Chicago, a conversation took place between Giangrosso and Kucala couched in evasive language, obviously to avoid the mention of cocaine; however, the "7315" address was mentioned during the conversation and the Express Mail package, similar to the one delivered on September 6, 1983, was subsequently delivered to 7315 South California Avenue in Chicago. Further, Officer Cummings testified that Terry Kucala appeared nervous as he waited outside the house for the delivery of the package. The totality of the circumstances surrounding the delivery, including the actions of Terry Kucala, is circumstantial evidence that the package contained illegal contraband. ·Since there was sufficient circumstantial evidence to establish that this delivered package contained cocaine, *see United States v. Roman*, 728 F.2d 846, 859 (7th Cir.1984), Giangrosso's claim that there was no evidence to sustain her conviction on Count II for using communication facilities to facilitate the delivery of cocaine is without merit. Had he been the trier of fact, Judge Cudahy may very well have found the evidence insufficient to support a conviction under Count II; yet this court is not the trier of fact and we are required to uphold the jury's verdict where "any rational trier of fact" could have found the defendant guilty of the crime. *Moya*, 721 F.2d at 610. In this case the delivery of the package on August 16th followed the same *modus operandi* as the September 6th delivery, namely the phone call from Giangrosso and Kucala was couched in evasive and terse language, and the reference during this conversation to the "7315" address was followed immediately thereafter with the delivery of an express mail package from ·

4. It was established at trial that the weekend of September 3, 4, and 5, 1983, was Labor Day weekend and thus there was no delivery of mail until Tuesday, September 6th.

Florida to the "7315" address. The evidence certainly is sufficient to support the jury's determination under Count II that the August 16th shipment contained cocaine.

 In order to establish the crime of conspiracy, "the government must prove that there was an agreement between two or more persons to commit an unlawful act, that the defendant was a party to the agreement, and that an overt act was committed in furtherance of the agreement by one of the co-conspirators." *United States v. Noble,* 754 F.2d 1324, 1328 (7th Cir.1985). As previously discussed, there was more than sufficient evidence in this case to establish that cocaine was transferred from Giangrosso to Lenny Kucala and that their conversations over the phone concerned the shipment of this cocaine to Chicago; thus, there was more than sufficient evidence to sustain Giangrosso's conviction on Count I for conspiring to distribute cocaine.

The decision of the district court is AFFIRMED.

CUDAHY, Circuit Judge, dissenting in part.

Despite the existence of some circumstantial evidence and the occurrence of a similar transaction involving cocaine, I think the evidence to sustain Count II is insufficient. There was a telephone call using evasive language, in which Giangrosso spoke to Lenny Kucala, gave an address and talked money. Immediately thereafter money was wired to Giangrosso and Kucala telephoned to confirm receipt. The following day a one pound package with a Florida return address was delivered to Terry Kucala. Terry waited nervously outside his house for a considerable period of time before the package arrived. All this amounts to highly suspicious circumstances, which might indicate a drug transaction, but it is clearly insufficient to prove that the delivered box contained cocaine.

The majority relies heavily on the "pattern" consisting of one other proven sale of cocaine under similar circumstances in September. This makes for a close case, but I cannot accept the single additional transaction as establishing a "pattern" sufficient to prove beyond a reasonable doubt that the box delivered in August contained cocaine.

The majority also relies on *United States v. Roman,* 728 F.2d 846, 859 (7th Cir.1984), for the proposition that the identity of a delivered substance may be shown by circumstantial evidence. However, in *Roman,* there were two witnesses who observed five or ten deliveries of LSD, each including 1,000 to 4,000 dosage units. Although no chemical analysis was performed, two witnesses testified to the identity of the substance as LSD. This is a far fetch from the delivery of a package of unknown content by mail under the suspicious circumstances of this case.

Apparently the five-year probation sentence would be unaffected by the disposition of Count II. Nonetheless, I respectfully dissent as to this count.