Edward BARKAUSKAS, Petitioner–
Appellant,

v.

Michael P. LANE, James Fairman, and
Neil F. Hartigan, Respondents–
Appellees.

No. 90–2703.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1991.

Decided Nov. 1, 1991.

Peter J. Bilanzic, James J. Pink (argued), Oak Lawn, Ill., for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Office of the Atty. Gen., Crim. Appeals Div., Howard J. Pikel, David L. King, Laurie N. Feldman, Kathleen F. Howlett (argued), Cook County State's Attorney's Office, Chicago, Ill., for respondents-appellees.

Before WOOD, Jr., and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Edward Barkauskas was convicted of murder and sentenced to life in prison. After exhausting his state remedies, he petitioned for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The district court denied it, and Barkauskas appealed. This court reversed and remanded the case to the district court "for evidentiary hearing to determine whether the state violated the *Brady* rule" (requiring the prosecution to disclose exculpatory materials upon request, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). *Barkauskas v. Lane,* 878 F.2d 1031, 1034 (7th Cir.1989). After hearing before a Magistrate Judge, the district court again denied Barkauskas' petition, and Barkauskas appealed.

Mrs. Barkauskas was shot and killed while walking along the street on the morning of July 16, 1981. Mr. Barkauskas' trial took place from January 25 to February 2, 1983. The principal witness was James Galason, who testified that Barkauskas had hired him to kill her. He obtained the assistance of Joseph and Kenneth Beringer. Galason testified that Joseph shot her. Galason had pled guilty and received a twenty year sentence.

Harvey Webb saw the event, but did not testify at that trial. He testified as a defense witness at the trial of the Beringer brothers in March, 1983. He said that James Galason was the one who fired the shots. He also testified that it was on February 21 (after the Barkauskas trial) that he had told Mr. Wadas, the prosecutor at both trials, that Galason had done the shooting. He further testified that he attended a line-up at the police station the day of the shooting, and further,

A. Well, they asked me could I identify the guy, I said I didn't remember anything, but you know, the guy had some blond hair like that, told me well that is the guy on the end right there and that was it.

Q. You say they simply told you, they who?

A. The police.

Galason was the person pointed out, but the references to "the guy" were as close as he came to testifying that he told the police that the man he pointed out was the shooter.

Barkauskas filed a motion for a new trial alleging, among other things, that he was not able effectively to impeach Galason at his trial because the state did not tell him that Webb had identified Galason as the triggerman. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state argued that the prosecutor also did not know that Webb claimed Galason was the triggerman until after Barkauskas' trial. Following an evidentiary hearing, the trial court found that it was on February 21, 1983, after Barkauskas' trial, that Webb told the prosecutor that Galason was the shooter, and that the prosecutor did not know that Webb believed Galason was the shooter until then. Neither the state appellate court nor the district court found any reason to disturb the finding that Webb did not tell the prosecutor that Galason was the gunman before Barkauskas' trial. *People v. Barkauskas,* 147 Ill.App.3d 360, 100 Ill.Dec. 821, 825, 497 N.E.2d 1183, 1187 (1986).

This court apparently accepted that finding. This court was led to believe, however, that at the line-up, Webb had identified Galason as *the person who fired the shots* (rather than as *one of the occupants of the car*). 878 F.2d at 1033, 1034. Concern that a prosecutor would probably have been informed about the results of a line-up, and that the facts as to Mr. Wadas' knowledge of the line-up may not have been adequately developed in the state court hearing prompted this court to reverse and remand for an evidentiary hearing in the district court. The matter was referred to a Magistrate Judge for hearing and report.

At the hearing, Barkauskas' counsel indicated his belief that the state had the burden on remand and offered no evidence, saying he would rely on the record. The state presented testimony from Chicago Police Detective Daniel McWeeny, who conducted the line-up in question, and from former Assistant States Attorney Kenneth Wadas, the prosecutor at both the Barkauskas and the Beringer trials. McWeeny testified that at the line-up Webb identified Galason as an occupant of the car from which the gunman emerged, not as the gunman. The police report of the line-up, signed by McWeeny, said that Webb "identified the subject Galason as one of the occupants of the red camaro." Assuming that this report came to the attention of Wadas, it gave him no basis for belief that Webb thought Galason shot the gun. The fact that Webb identified Galason as one of the occupants of the car was consistent with Galason's testimony and would not have been useful to the defense. It was the assumed identification of Galason as the person shooting the gun that this court

thought could have been useful in attacking Galason's credibility.

Wadas testified that at the time of the Barkauskas trial no one had told him that Webb had identified Galason as the shooter. Wadas said that he spoke with Webb twice, and that Webb had never told Wadas that he had identified Galason as the gunman, or that Galason was the gunman. Wadas could not remember whether his second conversation with Webb occurred before or after Barkauskas' trial. At the close of the evidence, the Magistrate Judge asked petitioner's counsel whether there was some reason for not calling Webb and he responded that "Mr. Webb's testimony, I believe, would not be any more, any better than it has been at any other time."

After the hearing, Barkauskas retained new counsel, and his new counsel moved for rehearing and for reopening of the hearing. The motion for rehearing specifically referred to "the critical nature of witness Webb's testimony," but neither motion referred to testimony from other potential witnesses. The Magistrate Judge granted the motion to reopen the hearing, but only to hear testimony from Webb and rebuttal by the state. Webb testified that he had seen Galason shoot Mrs. Barkauskas and that at a line-up on the day of the murder, he had picked Galason out as the gunman. Apart from these assertions, Webb did not remember anything clearly and, in fact, said he had trouble remembering what happened the day before the hearing. In his closing argument after Webb's testimony, Barkauskas' counsel admitted, "[S]o whether or not there was—Mr. Webb identified the shooter at the line-up, I don't believe is relevant. I mean I wish we could prove it, but there's no way we can." He focussed on the issue of whether Webb met with the prosecutor and told him Galason was the shooter before Barkauskas' trial, but that issue has been resolved by state court findings not questioned by the district court or this court.

Magistrate Judge Bucklo made a carefully detailed Report. She found McWeeny and Wadas credible witnesses. She set forth an analysis of inconsistencies, lapses,

and failures of memory by Webb. She found him "patently unreliable" and his testimony concerning the line-up not credible.

She concluded that "[M]r. Webb did not identify Mr. Galason as the shooter at the line-up. Thus, the state did not, and could not, fail to disclose such information to Mr. Barkauskas." Alternatively, she asserted that even if Webb had then identified Galason as the shooter, there was no evidence that Mr. Wadas or any other prosecutor knew that prior to the Barkauskas trial. Accordingly, she concluded that Mr. Barkauskas has failed to meet his burden of showing that the state failed to disclose information favorable to his defense. The district court agreed, adopting the Report and denying the petition for *habeas corpus* relief.

On appeal, Barkauskas does not challenge the findings as clearly erroneous, but contends that because of deficiencies of his former counsel, he was denied effective assistance of counsel on remand, and that the Magistrate Judge abused her discretion in limiting the second hearing to Webb's testimony, depriving him of due process of law.

## DISCUSSION

■ Barkauskas argues that he was denied his Sixth Amendment right to effective assistance of counsel when his first attorney did not present any evidence at the evidentiary hearing, even though Barkauskas bore the burden of proof. The Sixth Amendment, however, applies only to criminal cases, and a petition for a writ of *habeas corpus* is civil in nature. *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983); *Robinson v. Fairman*, 704 F.2d 368, 371 n. 6 (7th Cir.1983); *LaClair v. United States*, 374 F.2d 486, 488–89 (7th Cir.1967). *Cf. Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir.1991) (no constitutional right to the assistance of counsel in a state collateral proceeding).

■ Even if the amendment were applicable, Barkauskas would have to show not only that his former counsel's performance

fell below the broad range of competence, but that it was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

 Under the circumstances of this case, it seems clear that Barkauskas has not shown any prejudice from his former counsel's failure to call witnesses, or any abuse of discretion or denial of due process in limiting the second hearing to Webb's testimony in response to a motion by present counsel which referred only to the need for Webb's testimony.

Petitioner's brief on appeal lists several persons or classes of persons who may have knowledge and memory of the significant events in this proceeding:

the Assistant State's Attorney originally assigned to investigate the case; the police officers present at the scene of the original incident, as well as the line-up, (not just the police officers called by the state at the evidentiary hearing); defense counsels for the Beringer brothers, who witnessed Assistant State's Attorney Wadas' statement that he met with Harvey Webb prior to the Barkauskas trial; and Mr. Kenneth Malotesta, who was allegedly present when Mr. Wadas interviewed Mr. Webb.

Former counsel for Mr. Barkauskas did not call any of those people, and would ordinarily be deemed to have waived the right. Assuming it would be unfair to rely on that waiver, present counsel in seeking reopening did not represent that any of those people would testify favorably to petitioner, and on appeal argues only that there was not "a full hearing on the issue." The record contains no reason to believe that the limitation of the second hearing to Webb's testimony prevented an outcome more favorable to Barkauskas.

 Looking solely by analogy at authority considering the requirement of a showing of prejudice in a claim of ineffective assistance of counsel, the party must present evidence, not mere conclusory allegations, that counsel overlooked exculpatory testimony. *United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir.1990); *United States v. Giangrosso,* 779 F.2d 376,

381 (7th Cir.1985); *see also United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987) (when "allegation of ineffectiveness of counsel centers on a supposed failure to investigate, we cannot see how ... the petitioner's obligation can be met without a comprehensive showing as to what the investigation would have produced").

The judgment appealed from is AF-FIRMED.