THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BERL GHARST, Defendant-Appellant (Andrew Riley *et al.*, Defendants).

Fourth District   No. 4—83—0320

Opinion filed February 21, 1984.

Michael B. Metnick, of Metnick & Barewin, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and Marlene Newton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted by a jury of home invasion, armed violence, conspiracy (to commit unauthorized delivery of cocaine), and unlawful restraint, violations of sections 12—11, 33A—2, 8—2 and 10—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 12—11, 33A—2, 8—2, 10—3). He was sentenced to concurrent terms of six years' imprisonment for home invasion, six years for armed violence, three years for conspiracy, and one year for unlawful restraint.

All offenses stemmed from a dispute over a drug transaction purportedly involving defendant, Andrew Riley, Donald Little, Mark Greene, Dennis Hilderbrand, and Ron Waller. The State relied upon three principal witnesses.

Ron Waller testified that he and his brother, Rory, lived at 1200 East Johns Street in Decatur, Illinois. Sometime after 11 p.m. on April 23, 1982, defendant and Mark Greene visited him at his home. The group intended to contact Dennis Hilderbrand about an $8,000 drug deal. Hilderbrand had apparently ordered a shipment of cocaine.

Greene, defendant, and Waller drove to a telephone booth where Waller called Hilderbrand. After making the call, Waller reported to Greene and defendant that Hilderbrand was no longer interested in purchasing the cocaine. Greene informed Waller that the cocaine had already been obtained and could not be returned. He attempted to persuade Waller to purchase it. Waller responded that he had no money. Greene and defendant then dropped Waller off at his house. Waller claimed that he later left home and attended a party.

Waller acknowledged that in a previous statement made to the police, he had attempted to disassociate himself from any drug trafficking. Waller testified under a grant of immunity, immunizing him from prosecution for any offense arising out of the drug transaction.

Ron Waller's brother, Rory, testified that at 2:30 a.m. on April 24, 1982, he was awakened from his sleep by a knock at the door. The visitor was Mark Greene. Rory recognized Greene and allowed him to enter. Greene asked Rory if he knew where his brother, Ron, was and also if he knew where Dennis Hilderbrand lived. Ron was not at home, but Rory gave Green directions to Hilderbrand's house. Meanwhile there was another knock at the door. Rory testified that he informed Greene that whoever was at the door would not be allowed to enter. He said that he intended to return to bed and requested that Greene leave. Greene responded that he knew who was at the door; he then unlatched it. Three men entered: defendant, Andrew Riley, and Donald Little. Little was armed with a submachine gun. Little, apparently referring to Ron Waller, asked whether Rory was the "mother-f---er" they were looking for. Greene informed the group that Rory was Ron Waller's brother. Little then inquired whether Rory knew where Dennis Hilderbrand lived. When Greene responded that he did, Rory was ordered to get his clothes on. Rory testified that he directed the group to Hilderbrand's residence. He rode in defendant's car with Mark Greene. Donald Little and Andrew Riley followed in another car. After arriving at Hilderbrand's house, Little instructed Rory to knock at the door. Rory complied and Hilderbrand answered his knock. When Hilderbrand unlatched the door, Little and Riley entered. Rory claimed that at this point he ran from the scene.

Rory then described a bizarre series of events in which he claimed to have met two separate groups of police officers. The officers were patrolling Eldorado Street, a major thoroughfare in Decatur. Rory acknowledged that he failed to inform the police officers about the events that had transpired. Rory did not relate his story to the police until 4 p.m. on April 24. He went to the police station where he was interviewed by Officer Dennis Harris of the Decatur police depart-

ment.

Mark Greene also testified concerning the events occurring on April 23 and 24. He claimed that defendant wanted him to arrange a meeting with Ron Waller for the purpose of making a cocaine deal. Defendant was to deliver the drugs. Greene confirmed that he and defendant picked up Ron Waller at Waller's residence shortly after 11 p.m. on April 23. The three of them left the house and drove in defendant's car. Waller made a telephone call and then conversed with defendant. Waller was returned to his home and Greene and defendant went to Greene's house where they remained until 12:45 a.m. They then met Donald Little near a park. A short while later, Greene and defendant arrived at Ron Waller's house. They were soon joined by Little and Riley, who were in a separate automobile. Greene knocked at the door and was invited in by Rory Waller. Greene confirmed that while he was conversing with Rory, the others knocked at the door. Greene, however, testified that Rory gave him permission to allow defendant, Little, and Riley to enter. He claimed that he had difficulty with the door and that Rory assisted him in getting it open. Greene acknowledged that Little was armed with a submachine gun. He, however, claimed that Rory voluntarily assisted them in locating Dennis Hilderbrand's home.

Greene admitted on cross-examination that home invasion charges that had been filed against him were later dropped. He had pleaded guilty to conspiracy pursuant to an agreement with the State that a recommendation of probation would be made to the court. He also testified that on the night in question he was under the influence of both cocaine and alcohol.

The State also presented certain physical evidence. Defendant's car was searched and a box of Smith & Wesson cartridges was found in the back seat. The machine gun that Donald Little was carrying could have used the type of ammunition found in defendant's automobile. In addition, a fingerprint lifted from defendant's automobile matched a fingerprint taken from Dennis Hilderbrand.

Officers Dennis Harris and Michael Mowen testified on behalf of defendant. Harris interviewed Rory Waller on April 24, 1982, concerning the instant offenses. At that time Waller described his assailants only as white males and not by name. He stated that he was unaware if drugs were involved in the incident. Michael Mowen interviewed Ron Waller on the same date. During this interview, Waller denied that he knew Dennis Hilderbrand.

The jury returned verdicts of guilty on all counts charged. Judgment was entered on the jury's verdict.

The remaining codefendants, Andrew Riley and Donald Little, were tried before a separate jury on the same charges which were brought against defendant. Riley was acquitted on all charges. Little was acquitted on charges of home invasion, unlawful restraint, and armed violence. The jury was unable to reach a verdict on the charge of conspiracy filed against Little.

Defendant complains that he was not proved guilty of home invasion, armed violence, and unlawful restraint beyond a reasonable doubt. A transcript of Riley's and Little's trial was introduced into evidence at the hearing on defendant's post-trial motion. Defendant notes that the principal witnesses for the State were the same in both cases. He urges that the evidence against him was identical to the evidence presented against Little and Riley. Citing *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19, defendant notes that if the evidence against codefendants is identical, the acquittal of one defendant raises a reasonable doubt as to the guilt of the other defendant. Accordingly, defendant urges that he is entitled to an acquittal.

We are unpersuaded. It should be noted initially that defendant has made no argument concerning reasonable doubt on his conviction for conspiracy. Therefore, that matter is waived under Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)). Moreover, we conclude that the acquittal of codefendants Little and Riley of charges of home invasion, armed violence, and unlawful restraint does not provide a basis for the reversal of defendant's convictions for these offenses. As a general rule, the failure of a jury to convict a codefendant does not raise a reasonable doubt as to the guilt of other codefendants. (*Stock; People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699.) It is only when the evidence as to each defendant is identical in every respect that the conviction of one defendant and the acquittal of another can be said to be so inconsistent as to require reversal on appeal. (*Beasley.*) We are aware of no case law in which a defendant's conviction was reversed by a reviewing court as a result of a codefendant's acquittal in a separate jury trial. We conclude that the rule relied upon by defendant has no application in such a situation. All trials are *sui generis*—no two may be presented in exactly the same manner. Here, all codefendants retained separate counsel. The cases were submitted to the respective juries on different instructions. Any number of trial factors may have differed, including the attitudes of the jurors and the relative credibility of the witnesses who testified.

Defendant refers us to the case of *People v. Hill* (1978), 65 Ill. App. 3d 879, 382 N.E.2d 881. In that case, this court was presented with a situation in which a defendant alleged that he was improperly

convicted upon the same evidence which resulted in an acquittal for a separately tried codefendant. We denied the defendant's request to supplement the record on appeal with a transcript of the codefendant's trial. We determined from the record presented that the evidence in the separate trials was not identical.

Although Little's and Riley's trial transcript was made a part of defendant's record on appeal, it is apparent, as in *Hill*, that the two trials were not the same. For example, in defendant's trial the State introduced evidence that a fingerprint of Dennis Hilderbrand was found on defendant's car. Similar evidence was not presented in the trial of Riley and Little. The fingerprint evidence clearly linked defendant with Hilderbrand and corroborated the State's theory that the home invasion, armed violence, and unlawful restraint convictions stemmed from a drug deal between defendant and Hilderbrand which had fallen through. It is significant that defendant does not contest his conviction for conspiracy. Little and Riley were not convicted of this offense. Thus, even if the rule in *Stock* is applied, the evidence against the three codefendants cannot be regarded as identical.

Defendant cites the case of *People v. Perez* (1980), 82 Ill. App. 3d 1007, 403 N.E.2d 688, for the proposition that the rule in *Stock* can be applied where the difference in evidence between the accused and coaccused is slight. However, in *Perez,* it is apparent that the appellate court regarded the evidence of defendant's guilt to be insufficient to support his conviction as a matter of law. The evidence in this case does not suffer from a similar infirmity. If Rory Waller's testimony is believed (and apparently the jury did and disbelieved Greene), defendant entered his home without permission. One of his cohorts displayed a weapon. Waller was compelled under threat of force to direct the group to Dennis Hilderbrand's home.

Although it is true that inconsistencies appeared in the State's case and the credibility of certain witnesses was called into question, the resolution of factual disputes and the assessment of the credibility of the witnesses are for the jury, and a reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. (*People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136.) We conclude that the evidence was sufficient to support defendant's convictions.

Defendant, however, contends that his convictions for armed violence and unlawful restraint should be set aside because the conduct involved was not separate and distinct from the conduct that served as a basis for his home invasion conviction. The People concede that the conviction for unlawful restraint must be vacated. We

accept the State's concession. Unlawful restraint was alleged in the information to be the underlying felony supporting defendant's conviction for armed violence. That offense requires the commission of any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2.) Thus, under the facts of this case, unlawful restraint was an included offense of armed violence. (See Ill. Rev. Stat. 1981, ch. 38, par. 2—9.) However, defendant is incorrect in his assertion that multiple convictions for home invasion and armed violence cannot stand. Although multiple convictions cannot be based upon the same act, separate convictions and sentences for multiple offenses are proper where the offenses are based on the commission of separate and distinct acts which are divisible from one another. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) In this case, defendant's act of entering the home of Rory Waller while a codefendant was armed with a dangerous weapon was separate and distinct from his subsequent act of detaining him.

For all the foregoing reasons, defendant's convictions for home invasion, armed violence, and conspiracy are affirmed. Defendant's conviction for unlawful restraint is vacated.

Affirmed in part, vacated in part.

MILLS, P.J., and MILLER, J., concur.