Carl William MONTGOMERY, Petitioner–Appellee,

v.

Dale PETERSEN, Respondent–Appellant.

No. 87–2302.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1987.

Decided May 4, 1988.

Nathan P. Maddox, Ill. Atty. Gen. Office, Springfield, Ill., for respondent-appellant.

William E. Harris, Springfield, Ill., for petitioner-appellee.

Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Carl Montgomery petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenged the constitutionality of his state conviction for residential burglary on the ground that he was denied the effective assistance of counsel guaranteed by the sixth amendment. The Honorable Richard Mills of the Central District of Illinois reviewed the petition and granted the writ. The state appeals. We agree with Judge Mills that the petitioner was denied effective assistance of counsel and therefore affirm.

## I

## BACKGROUND

### A. *Facts*

The petitioner was arrested and charged with the commission of two separate bur-

glaries occurring on the same day, one in Moultrie County, Illinois and the other in Macon County, Illinois. He was tried in Moultrie County in March 1984. The jury found him guilty, and he received a seven-year prison sentence. In April 1984, following the Moultrie County conviction, the petitioner was tried in Macon County for the second offense. The Macon County jury acquitted the petitioner. The only difference between the evidence presented in the two trials was the testimony—presented in the Macon County trial but not in the Moultrie County trial—of a disinterested witness who placed the petitioner in Springfield on the day of the burglaries. The following is a brief synopsis of the testimony at both trials taken from the state appellate court opinion in Mr. Montgomery's post-conviction petition for a new trial:[1]

Testimony at the Moultrie County trial held on March of 1984 was elicited as follows: The State's first and primary witness, defendant's half-brother Wayne (Butch) Montgomery, testified that the defendant drove down from Springfield and met him at his father's cabin in Beardstown at about 8:30 or 9:00 the morning of September 9, 1983. The two men discussed a possible burglary in Arcola. Wayne's wife, Mary Lou, was present during part of that discussion. She later testified that she overheard their burglary plans, and that she observed the two men drive away in defendant's car. Wayne stated that he and the defendant later drove around, but abandoned their Arcola burglary plans because too many people were present in the area. Instead, they eventually burglarized a home in Moultrie County and a home in Macon County. They then drove back to defendant's residence in Spring-

---

1. In granting the petition for writ of habeas corpus, Judge Mills relied upon the summary of facts contained in the state appellate court opinion. He did not review the transcript of the underlying state trial and did not hold a new evidentiary hearing. *Montgomery v. Petersen,* 664 F.Supp. 398, 399–400 (C.D.Ill.1987). Because there is no dispute as to these facts, this approach was proper. *See Cartee v. Nix,* 803 F.2d 296, 298 (7th Cir.1986) (district court need not hold hearing where facts are not in dispute

and where habeas applicant received a full and fair evidentiary hearing in state court), *cert. denied,* —— U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987); *Davis v. Franzen,* 671 F.2d 1056 (7th Cir.1982) (district court need not examine state trial records in reviewing habeas petition where testimony is summarized in state appellate court's opinion and petitioner does not dispute that summary). Neither party takes issue with the district court's reliance on the state court's summary of facts.

field, arriving there about 8:30 or 9:00 that evening. At this point, defendant made several telephone calls to two people, John Mardis and Orville Bartells, whom he and his half-brother though [sic] might be able to "move" the merchandise. According to Wayne Montgomery, he and defendant drove to the home of Orville Bartells in Chandlerville, leaving around 10:00 p.m.

Wayne also testified that he pleaded guilty to this burglary as well as others, but he did not expect to gain any favoritism based on his testimony in the present case. On cross-examination, Wayne admitted that he had prior convictions for burglary and battery.

Defendant's brother Dale Montgomery and his girlfriend Betty Simons both testified that they were at defendant's Springfield residence the evening of September 9, 1983, when they observed defendant and Wayne arrive at the house together. Dale and Betty stated they left defendant's home at about 9:00 p.m.

An exhibit was admitted into evidence containing a record of telephone calls made from the defendant's home the night of September 9. The itemized phone bill listed long-distance calls made to Mardis' home at 9:33 and 9:50 p.m., and a phone call to Bartells' residence at 9:43 p.m. The phone bill also showed numerous other calls made to these two people over a period of time; defendant stated they were his friends.

Defendant's wife, Carol Montgomery, testified for the defense. She stated that the events of September 9, 1983, stuck out in her mind because it was their son's birthday. She stated that she and defendant went to the Sears store in Springfield that afternoon to purchase a bicycle as a present for their son. She also testified that defendant was around the house most of the day working on a car. She further stated that a group of family and friends came to the house that evening for a birthday party. She denied that Dale Montgomery and Betty Simons had stopped by the evening of September 9, recalling that they came over the next night instead.

In all, some 12 witnesses testified on behalf of the defendant that they had observed him in and around Springfield September 9. Many also testified that they were present for the birthday party in the evening, but that Wayne Montgomery, Betty Simons, and Dale Montgomery were never at the defendant's home. Significantly, all of these witnesses were either relatives or close friends of the defendant's family.

At the conclusion of all the evidence, the jury found the defendant guilty of residential burglary. This court affirmed his conviction on appeal.

During the Macon County trial in April of 1984, Barry Holtkamp, a Sears employee in the Springfield store, was called to testify. He stated that defendant and his wife had purchased a bicycle from him at about 1:15 or 1:30 the afternoon of September 9, 1983. Holtkamp testified that he remembered the defendant because it was the only bicycle sale he made that day. Holtkamp further recalled that defendant had joked about the bike being "junk," but because it was cheap, he would buy it anyway.

*People v. Montgomery,* 141 Ill.App.3d 428, 95 Ill.Dec. 733, 736–37, 490 N.E.2d 206, 209–10, *cert. denied,* —— U.S. ——, 107 S.Ct. 224, 93 L.Ed.2d 151 (1986).

### B. *Procedural History*

After the Appellate Court of Illinois affirmed his Moultrie County conviction on direct appeal, *People v. Montgomery,* 125 Ill.App.3d 1175, 89 Ill.Dec. 817, 481 N.E.2d 368 (Ill.App.Ct.1984), Mr. Montgomery filed a state petition for post-conviction relief. In this petition, he raised for the first time a claim of ineffective assistance of counsel. A hearing on the petition was held before the Moultrie County circuit court on April 8, 1985. The transcript of the Sears clerk's Macon County trial testimony was introduced. In addition, G. Ronald Kesinger, the petitioner's counsel for both trials, testified that

defendant and his wife had given him a receipt for the Sears purchase on September 9 and requested he investigate

this potential witness, but that he failed to do so. Kesinger stated this was merely due to "inadvertence" on his part, as he was busy interviewing other potential witnesses. Kesinger further stated:

> "I was given just a receipt. I wasn't given a name so I didn't know who to interview until I found out who the witness was. But at that point, I simply didn't believe the defendant so I didn't think it happened."

Kesinger noted that the sales receipt had an employee code number on it, which defendant's wife and mother-in-law, on their own initiative, used to locate the witness.

*Montgomery,* 95 Ill.Dec. at 737, 490 N.E.2d at 210. Upon hearing all testimony, the trial court denied relief. Mr. Montgomery subsequently filed a motion for reconsideration that also was denied.

Mr. Montgomery then appealed. The Appellate Court of Illinois held that the totality of the circumstances did not support a finding of attorney incompetence and affirmed the state trial court's denial of the petition. *Id.* 95 Ill.Dec. at 738, 490 N.E.2d at 211. The court stressed that Mr. Kesinger interviewed several potential witnesses in preparing a defense and, in fact, put on twelve alibi witnesses: "Mindful of the admonition that attorney performance should not be distorted by the benefit of hindsight, we fail to see how the addition of one more witness would, as a reasonable probability, have changed the outcome of the trial." *Id.* Commenting on the different outcomes of the Macon County and Moultrie County trials, the court stated that: "Any number of trial factors may have differed beyond the addition of Holtkamp's testimony, including the attitudes of the jurors and the relative credibility of the witnesses. Indeed, all trials are *sui generis*—no two may be presented in exactly the same manner." *Id.* (citing *People v. Gharst,* 122 Ill.App.3d 1, 77 Ill.Dec. 509, 512, 460 N.E.2d 813, 816 (1984)). In this state post-conviction appeal, Mr. Montgomery was represented by the same counsel

who represented him in both the Moultrie County trial and the Macon County trial. *Id.* 95 Ill.Dec. at 735, 490 N.E.2d at 208.[2] The Appellate Court of Illinois, in its opinion, remarked: "We appreciate the candor of counsel in pursuing this matter and giving his opinion as to his own incompetence." *Id.* 95 Ill.Dec. at 739, 490 N.E.2d at 212. On June 3, 1986, the Illinois Supreme Court denied the petitioner leave to appeal. Following the Illinois courts' denial of a state remedy and the United States Supreme Court's denial of certiorari, *Montgomery v. Illinois,* — U.S. ——, 107 S.Ct. 224, 93 L.Ed.2d 151 (1986), the petitioner sought federal habeas relief in the district court.

## II

## DISTRICT COURT OPINION

Judge Mills began his analysis of the ineffective assistance issue with an explication of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court set out a two-prong test for evaluating an ineffective assistance of counsel claim. The first prong requires the reviewing court to examine the performance of counsel. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The second prong requires a showing that the deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must satisfy both prongs of the *Strickland* test before a court may say that he was denied constitutionally effective assistance of counsel. *Id.*

Applying this analysis to the facts, Judge Mills found, initially, that Mr. Kesinger's failure to investigate the Sears receipt was a serious error in professional judgment and "was not related in any way to trial tactics or strategy." *Montgomery v. Pet-*

---

**2.** We note that, in the district court and in this court, Mr. Montgomery has been represented by

other counsel. R. 1 & 4 at 4.

*ersen,* 664 F.Supp. 398, 401 (C.D.Ill.1987). Judge Mills specifically noted that Mr. Kesinger admitted that his reasons for not following the lead were "inadvertence" and his disbelief of the petitioner. *Id.* at 401. Judge Mills concluded that "[i]n light of the information available to counsel at the time, the *failure to investigate the only available disinterested alibi witness* fell below the standard of reasonably effective assistance required by *Strickland.*" *Id.* at 401–02 (emphasis in original).

Judge Mills then found that the petitioner also had met his burden of showing that a reasonable probability existed that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Judge Mills relied on two separate grounds in reaching this conclusion. First, he pointed out the significance of the disinterested alibi testimony that counsel failed to uncover:

> Not only would the unbiased alibi witness' testimony greatly enhance the defense case if it stood alone, it also lends even greater support to defendant's case when we consider the fact that it corroborates the otherwise impeachable testimony of 12 additional alibi witnesses. *It is unrealistic to look at this testimony as simply cumulative.*

*Montgomery,* 664 F.Supp. at 402 (emphasis supplied). Second, Judge Mills considered the importance of the second trial in which the petitioner was acquitted of the Macon County burglary:

> Further, and in what is indeed a rare occurrence, we have evidence of a trial based on almost identical facts as a basis for comparison. In the second trial, the disinterested alibi witness was called and Petitioner was acquitted. This is strong evidence that the result would have been different but for counsel's errors. We agree with the Illinois Appellate Court that all trials are *sui generis* and that the results of the Macon County trial do not necessarily compel the conclusion that Petitioner would have been acquitted if Holtktramp [sic] was called in the Moultrie County trial. It is certainly

true that other factors do play a part in the results of trials.

However, Petitioner's burden is not that overwhelming. *Strickland* specifically disavowed use of an outcome determinative test in making out a finding of prejudice. *Strickland,* 466 U.S. at 693, 694, 104 S.Ct. at 2068. Petitioner must only show a reasonable probability of a different outcome. For us, the results in the Macon County trial go a long way in showing that probability. Furthermore, this is not a case where the other evidence brought by the state would overwhelmingly favor a finding of guilty. Hence, when the evidence is looked at in its totality, we believe the error of counsel "undermine[d] confidence in the outcome" and thus deprived defendant of his fundamental right to a fair trial in violation of the Sixth Amendment.

*Id.*

## III

## DISCUSSION

This case requires that we apply principles of law that have been settled since the Supreme Court's holding in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As we noted in *Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987), "[t]he burden on the petitioner is a heavy one. In order to establish that he was denied his sixth amendment right to counsel, he must affirmatively establish both 'components' of the *Strickland* analysis—the 'performance' component and the 'prejudice' component." We believe that Judge Mills correctly applied the *Strickland* standard. Consequently, we reach the same conclusion as did Judge Mills that the petitioner was denied effective assistance of counsel.

### A. *Performance of Counsel*

As we noted in *Sullivan:*

■ With respect to the "performance" component, "the proper standard for attorney performance is that of reasonably effective assistance." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "[T]he defendant

must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. In evaluating counsel's performance, "all the circumstances," *id.*, must be considered.

No particular set of detailed rules for counsel's conduct can satisfactorily account for the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. *Id.* at 688–89, 104 S.Ct. at 2065.

*Sullivan,* 819 F.2d at 1391. We also emphasized, as the Supreme Court did in *Strickland,* that judicial scrutiny of counsel's performance must be highly deferential. *Id.* (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). Counsel's performance must be evaluated in view of the totality of the circumstances and the court should begin with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

This case, like *Strickland,* involves an ineffective assistance claim based on counsel's failure to investigate. In this type of case, the temptation to rely on hindsight is particularly strong and, consequently, we must take special pains to guard against the inadvertent use of such a methodology. Rather, we must follow the specific direction of the Supreme Court that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Id.* at 690, 104 S.Ct. at 2066. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable profes-

sional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or *to make a reasonable decision that makes particular investigations unnecessary.*" *Id.* at 690–91, 104 S.Ct. at 2066 (emphasis supplied).

In our view, the district court was correct in its determination that, under the facts of this case, counsel did not make a reasonable decision that further investigation was unnecessary. At the outset, it is important to keep in mind that trial counsel's failure to investigate the Sears receipt was *not,* by counsel's own admission, a strategic decision. Rather, he testified that his failure was due to "inadvertence" as well as the fact that he "simply didn't believe" the petitioner. In *Strickland,* the Supreme Court noted that information supplied by the defendant is a prime source of the factual bedrock upon which counsel must rely in making strategic choices. *Id.* at 691, 104 S.Ct. at 2066. This fundamental principle has been stressed by this circuit and by other circuits in cases following *Strickland.* In *United States ex rel. Cosey v. Wolff,* 727 F.2d 656, 658 (7th Cir. 1984), the defendant's trial counsel stated that he failed to investigate even one of the five potential witnesses whose names the defendant had given him because he believed the state's case against the defendant "was so weak that it would be entirely unnecessary to call any witnesses to the stand other than Cosey and his co-defendant." The court held that counsel's "out-of-hand rejection of the proffered witnesses without even interviewing or investigating them" fell below "minimum standards of professional competence." *Id.* at 658. Moreover, the court refused to characterize counsel's failure to investigate as a reasonable exercise of professional judgment:

Cosey's entire defense at trial rested on discrediting the state's main witness—the victim. The five proffered witnesses would not only have corroborated Cosey's story and further impeached the victim's version, but, as the state conceded in oral argument, if the witnesses were believed, their testimony alone

would have entirely exculpated Cosey. *Without interviewing and investigating such promising witnesses, Cosey's attorney had no reason to believe they would not be valuable in securing Cosey's release.* Although three of the witnesses had an apparent reason to be biased in Cosey's favor, that alone is insufficient cause to automatically reject them. *Moreover, two of the proffered witnesses had no apparent reason for bias.* There was no strategy involved here, only negligence.

*Id.* at 658 n. 3 (emphasis supplied);[3] *see also United States v. Debango,* 780 F.2d 81, 85 (D.C.Cir.1986) (the complete failure to investigate potentially corroborating witnesses can hardly be considered a tactical decision); *Crisp v. Duckworth,* 743 F.2d 580, 584 (7th Cir.1984) ("an attorney who fails even to interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defend his omission simply by raising the shield of 'trial strategy and tactics' "), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985); *Thomas v. Lockhart,* 738 F.2d 304, 308 (8th Cir.1984) (counsel's failure to investigate three alibi witnesses whose names were supplied by the defendant constituted ineffective assistance of counsel because this information was critical in assessing intelligently whether the defendant was guilty).

■ It is, of course, not necessary that defense counsel "track down every lead" or "personally investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan,* 819 F.2d at 1392. Indeed, *Strickland* explicitly notes that "when a defendant has given counsel rea-

son to believe that pursuing certain investigations would be fruitless or even harmful," a decision not to pursue "those investigations may not later be challenged as unreasonable." 466 U.S. at 691, 104 S.Ct. at 2066. Nevertheless, counsel does have a duty to contact a potential witness unless counsel "can make a rational decision that investigation is unnecessary." *Crisp,* 743 F.2d at 583; *see also Earl v. Israel,* 765 F.2d 91, 93 (7th Cir.) ("The representation to which a criminal defendant is constitutionally entitled requires his lawyer, before trial, to look for evidence that will be helpful to the defendant; but of course if it is reasonable in the circumstances not to conduct a particular investigation, the lawyer's failure to do so will not establish ineffective representation."), *cert. denied,* 474 U.S. 951, 106 S.Ct. 350, 88 L.Ed.2d 300 (1985).

■ Unlike many of the "failure to investigate" cases that have come before this court and the other circuits, this is not a case where counsel totally failed to present a defense. However, the importance of the information that was not tracked down and presented to the jury is, under the facts of this case, extraordinarily significant. Here, the Sears clerk can hardly be characterized as a cumulative alibi witness. Rather, he was the *only* disinterested witness in the case. All twelve of the other defense witnesses were either close friends or relatives of the petitioner. The testimony presented to the Moultrie County jury basically "boiled down to a swearing match between a prosecution witness, who admitted committing the crime, and [the petitioner], who denied any part in it." *Nealy v. Cabana,* 764 F.2d 1173, 1174 (5th Cir. 1985).[4] Where the state's case consists

---

**3.** The court went on to find that counsel's inadequate performance had prejudiced the defendant. *United States ex rel. Cosey v. Wolff,* 727 F.2d 656, 658 (7th Cir.1984). In assessing prejudice, the court applied the then prevailing rule in this circuit that the government had to prove beyond a reasonable doubt that the trial counsel's ineffective assistance of counsel did *not* affect the verdict. We note that *Cosey* was decided before *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that this is no longer the correct standard for evaluating a habeas petitioner's claim of preju-

dice. *See United States v. Payne,* 741 F.2d 887, 891 n. 4 (7th Cir.1984).

**4.** Although the testimony of an accomplice is a sufficient basis upon which the jury may convict, *People v. Wilson,* 66 Ill.2d 346, 5 Ill.Dec. 820, 362 N.E.2d 291 (1977), Illinois courts generally regarded such testimony with skepticism and suspicion. " 'It is ... universally recognized that such testimony has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice toward the accused, fear, threats, prom-

chiefly or solely upon the word of an accomplice, Illinois courts have recognized the great importance to the defendant of evidence of direct contradiction or material corroboration from other sources. *See People v. Sheridan,* 51 Ill.App.3d 963, 10 Ill.Dec. 34, 36, 367 N.E.2d 422, 424 (1977), *cert. denied,* 435 U.S. 975, 98 S.Ct. 1622, 56 L.Ed.2d 68 (1978).

The other additional witnesses who testified at trial did not alter the basic nature of this case as a "swearing match" between the accomplice and the petitioner. Wayne Montgomery's testimony was corroborated by the testimony of his wife Mary Lou, Dale Montgomery, and Betty Simons. The petitioner's alibi defense was corroborated by twelve witnesses, all family members or friends, who directly contradicted Wayne Montgomery. The jury was presented with a straightforward credibility choice. Every one of these witnesses had a reason to be biased. Given the standoff between two factions in this family, one group supporting Wayne Montgomery and the other group supporting the petitioner, independent corroboration by a neutral, disinterested witness would perforce be extremely significant. *See People v. McVay,* 135 Mich.App. 617, 354 N.W.2d 281 (1984) (pre-*Strickland* case finding ineffective assistance of counsel where defense counsel did not present testimony of neutral witness who would have lent credibility to the defendant's version of the facts in a situation where credibility was a crucial issue); *cf. Mulligan v. Kemp,* 771 F.2d 1436, 1439 (11th Cir.1985) (defense counsel warned defendant that a "family alibi" defense is not often persuasive and would probably result in a conviction), *cert. denied,* — U.S. —, 107 S.Ct. 1358, 94 L.Ed.2d 529 (1987); *Sheridan,* 10 Ill.Dec. at 37, 367 N.E.2d at 425 (court finds testimony of accomplices convincing where there were no apparent family links to supply a credible motive for a "frame-up").

We believe that the district judge, who was able to draw on his long experience as a state trial judge, correctly concluded that

defense counsel, even without the benefit of hindsight, should have recognized the crucial importance of the Sears clerk as a witness. We recognize that defense counsel was not given the witness' name—just the initialed sales receipt. However, the petitioner explained to Mr. Kesinger what the receipt was for and why it might be important to his defense. The fact that Mr. Kesinger did not have the name or address of the sales clerk did not present a significant obstacle to locating him, as evidenced by the ease with which the petitioner's wife and mother-in-law were able to find him. Thus, this is not a case where counsel's failure to locate a particular witness may be excused. *See United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 957–58 (7th Cir.1986); *Denton v. Ricketts,* 791 F.2d 824, 827 (10th Cir.1986); *Jones v. Smith,* 772 F.2d 668, 674 (11th Cir.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986). Nor can we say that defense counsel's conclusory statement that he did not believe his client was an adequate basis for ignoring such an important lead. Indeed, if counsel had taken the few steps necessary to identify and interview the Sears clerk, he may well have formed a more favorable view of his client's veracity. There was nothing inherently suspect in the sales receipt. Whether the defendant had purchased a bicycle at Sears at a time when the state's witnesses placed him outside of Springfield was subject to independent verification.

### B. *Prejudice of Counsel's Errors*

We now turn to the prejudice prong of the *Strickland* test. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. The test for evaluating the prejudice component is whether there is a reasonable probability that counsel's errors affected the outcome of the trial. "A reasonable probability is a probability sufficient to un-

ises or hopes of leniency, or benefits from the prosecution, which must always be taken into consideration.'" *People v. Price,* 21 Ill.App.3d 665, 316 N.E.2d 289, 295 (1974) (quoting *People v. Hermens,* 5 Ill.2d 277, 125 N.E.2d 500 (1955)).

dermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Recently, this court has noted that a habeas petitioner cannot meet his burden under the prejudice prong of *Strickland* "without a comprehensive showing as to what the investigation would have produced." *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987). In *Cross,* we stated:

> The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result. Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses. "Complaints of uncalled witnesses are not favored in federal habeas review." *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984).

*Id.* at 1016.

In this case, unlike so many cases involving a similar claim of failure to call potential witnesses,[5] the petitioner has pointed to a specific witness whose missing testimony would have been exculpatory. In fact, the Sears witness' testimony was significant to the petitioner's defense in several respects. First, it directly contradicted the state's chief witness, who testified that he and the petitioner were together outside of Springfield from 9:00 a.m. until 9:00 p.m. that day. *See Nealy,* 764 F.2d at 1180 (prejudice component satisfied where missing testimony directly contradicted the prosecution's evidence). Thus, the Sears clerk's testimony had a direct bearing on this witness' veracity, a witness upon whose testimony the state depended in order to secure a conviction. However, even more important than impeaching the testimony of the state's chief witness, the Sears clerk's testimony also provided the petitioner with an unbiased alibi defense.[6] As such, it did not merely raise doubts about the petitioner's guilt; if believed by the jury, it would have directly exonerated him of the crime. Finally, the jury might well have viewed the otherwise impeachable testimony of the twelve witnesses who were presented at the Moultrie County trial in a different light had the jury also heard the testimony of this disinterested witness. Therefore, the Sears clerk's testimony may have transformed a weak case into a strong one merely by corroborating the testimony of these other defense witnesses. In sum, we find particularly apt the observation of Judge Mills that "[i]t is unrealistic to look at [the Sears witness'] testimony as simply cumulative." *Montgomery,* 664 F.Supp. at 402.

Furthermore, this is not a case where the evidence of the petitioner's guilt is overwhelming. Rather, the state's case depended on the relative credibility of Wayne Montgomery and the petitioner. Because the verdict against the petitioner rested primarily on the testimony of the confessed accomplice, it is " 'more likely to have been affected by errors than one with overwhelming record support.' " *Nealy,* 764 F.2d at 1180 (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069).

Finally, the petitioner's acquittal in the Macon County trial is persuasive evidence

---

5. *See, e.g., Dees v. United States,* 789 F.2d 1521, 1522 (11th Cir.1986); *United States v. Debango,* 780 F.2d 81, 86 (D.C.Cir.1986); *United States v. Giangrosso,* 779 F.2d 376, 381 (7th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); *Keys v. Duckworth,* 761 F.2d 390, 394 (7th Cir.1985) (per curiam); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).

6. Although it is not entirely clear what the state's argument is, the state appears to question in its brief Judge Mills' classification of the Sears witness as an "alibi" witness. Appellant's Br. at 8 n. 1. We think such an argument is particularly unconvincing in light of the fact that the state never contended at the Macon County trial, or at oral argument in this appeal, that the petitioner could have purchased the bicycle at the Sears store in Springfield and still have committed the burglaries with Wayne Montgomery. "A defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party" is an alibi defense. *Black's Law Dictionary* 66 (5th ed. 1979). Under Wayne Montgomery's version of the crime, the petitioner spent the entire day with him *outside of Springfield* planning and executing the burglaries. Thus, the testimony of the Sears witness, if believed, rendered it impossible for the petitioner to be the guilty party under the prosecution's theory of the case, as presented through the testimony of the professed accomplice.

that the omission of defense counsel in this case was prejudicial. We agree with Judge Mills that the Illinois appellate court's comment that every trial is *sui generis* may be accurate but misconceives the petitioner's burden of proof under *Strickland.* In order to demonstrate prejudice, the petitioner need only establish a *reasonable probability* that the Sears witness' testimony would have changed the jury's verdict. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The petitioner is not required to prove that no other factor possibly could have affected the result of the Macon County trial. We note also that the state is unable to point to any difference between the two trials, other than the Sears witness' testimony, that would account for the different results.

All of the factors discussed above, independently and in combination, undermine our confidence in the outcome of the Moultrie County trial. Therefore, we conclude that the petitioner has met his burden in showing that his defense counsel's failure to secure the testimony of the Sears witness was prejudicial.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.