29 F.3d 638
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Douglas A. YOUNG, Petitioner-Appellee,
v.
Chase RIVELAND, Respondent-Appellant.
 No. 93-36021.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submission Deferred June 7, 1994.
Submitted June 21, 1994.
Decided July 11, 1994.
 
 Before: WRIGHT, WIGGINS, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Respondent-appellant appeals the district court's grant of petitioner-appellee's habeas corpus petition. Petitioner-appellee petitioned for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254, challenging his conviction for second-degree assault. The district court granted the writ on the ground that he was denied effective assistance of counsel. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On January 16, 1987 at 5:00 P.M., petitioner discovered that his house had been burglarized. Petitioner suspected that the burglary had been committed by his son, Damon, who had run away from home, stolen from petitioner, and now associated with a gang. Petitioner drove to the Burger King at which Damon, and the gang he associated with, "hung out." Petitioner wore a bullet-proof vest and carried a loaded .380, a loaded .22 automatic and extra clips of ammunition.
 
 
 4
 Petitioner found Damon and asked to speak to him alone. The two went outside. Petitioner alleges that Damon told him that he (Damon) had a gun on him. A struggle ensued. An acquaintance of Damon, Ryan Luksan, approached petitioner from behind, put his left arm around petitioner and hit petitioner repeatedly on the head with his right fist. Eventually, petitioner broke away. Petitioner alleges that he was disoriented and then heard someone yell, "Look out, he's got a gun." Petitioner asserts that he thought that "he" was Luksan, and so petitioner drew his gun and fired at Luksan, aiming at and striking Luksan's hip. Petitioner concedes that he had looked at Luksan's hands to see if Luksan was holding a gun before he fired his gun, and did not see one. Petitioner also notes, however, that he knew that Luksan and the gang had a reputation for violence. Petitioner then fled the area and called the police, reporting that he was in danger from a gang, had been assaulted and had shot a man.
 
 
 5
 The Burger King manager on duty that night was Martin Fewell. Fewell was inside during the shooting. An employee alerted Fewell to the incident. Fewell called 911, reporting that there were possibly two guns involved. The call was recorded and later transcribed.
 
 
 6
 While cleaning the restaurant that evening, a Burger King employee found an unspent .22 caliber bullet on the floor. Fewell gave this bullet to the police. The prosecution never turned this bullet over to the defense, however. Later in the cleanup, Burger King employees found additional bullets in one of the seats. The seat was allegedly in the area where Luksan was sitting prior to the shooting. It is unclear whether or when Fewell gave these additional bullets to the police. The defense did not even find out about the additional bullets until 1990.
 
 
 7
 In April 1987, Fewell quit his job at Burger King and moved from Tacoma, Washington to Van Nuys, California. He left with his apartment manager a forwarding address to his mother-in-law's home in Eugene, Oregon.
 
 
 8
 Petitioner was charged with second-degree assault. His court-appointed lawyer was a staff attorney with the Associated Counsel for the Accused (ACA). Counsel carried a heavy case load. He was in trial during the month prior to petitioner's trial, and immediately thereafter. He had nine months of felony experience. Counsel was assisted by an ACA investigator, who had a similar work load. The investigator made several unsuccessful attempts to contact Fewell. Counsel then decided to proceed to trial without Fewell because counsel believed that he could get Fewell's testimony into evidence through the transcript of the 911 tape. Counsel apparently also believed that by proceeding to trial on schedule he would be forcing the prosecutor to go to trial unprepared. Counsel did not discuss the possibility of a continuance with petitioner.
 
 
 9
 At trial, the central issue was whether petitioner acted reasonably in self-defense when he shot Luksan. Petitioner maintained that he had a good faith, even if mistaken, belief that he was in danger and had to use deadly force to protect himself. The prosecution countered that petitioner intended to do violence that night, pointing to the fact that petitioner wore a bullet-proof vest to the restaurant and carried two loaded weapons and extra ammunition.
 
 
 10
 During trial, the prosecution called Officer Turner, the police officer who responded to petitioner's call to report that his house had been burglarized. Officer Turner testified that petitioner was not wearing a bullet-proof vest when she saw him. Petitioner then asked counsel to call his roommate and co-worker, Diane Leadbetter, who could testify that petitioner always wore the vest and was, in fact, wearing the vest when Officer Turner was at the house. Petitioner also asked counsel to call another co-worker, Beverly Holbrook, who could testify that petitioner always wore his vest to work. Counsel refused to call either Leadbetter or Holbrook. Counsel reasoned that such testimony would make petitioner look like a "self-defense nut." Counsel also noted that such testimony would distract from petitioner's self-defense defense.
 
 
 11
 The jury deadlocked twice. Ultimately, petitioner was convicted and sentenced to 21 months in prison. Petitioner filed a direct appeal and a pro se state habeas corpus petition in the Washington Court of Appeals. He asserted that he received ineffective assistance of counsel. The Washington Court of Appeals consolidated the two matters, rejected petitioner's claims and affirmed his conviction. Petitioner then filed a petition for review in the Washington Supreme Court. The petition for review was denied without comment.
 
 
 12
 On May 25, 1990, petitioner filed a pro se federal habeas corpus petition. Again, he asserted that he received ineffective assistance of counsel. He also claimed, for the first time, that his conviction was unconstitutional because the prosecutor failed to disclose to the defense that bullets were found inside the restaurant that night. See Brady v. Maryland, 373 U.S. 83 (1963). The district court dismissed petitioner's habeas corpus petition without prejudice because petitioner had not exhausted his Brady claim.
 
 
 13
 Petitioner then filed a second state habeas corpus petition in the Washington Court of Appeals, again pro se. Petitioner argued that he received ineffective assistance of counsel and that the prosecution had withheld evidence. The Washington Court of Appeals ruled that both claims were procedurally barred. The first claim had already been rejected. See RCW 10.73.140; RAP 16.4(d). The second claim was untimely. See RCW 10.73.090(1). Petitioner did not appeal to the Washington Supreme Court.
 
 
 14
 On September 12, 1991, petitioner filed this federal habeas corpus petition, again pro se. Again, petitioner argued that he received ineffective assistance of counsel. Evidentiary hearings were held. The magistrate judge issued a report recommending that petitioner's habeas corpus petition be granted. The district court adopted the magistrate judge's recommendations and issued its judgment granting petitioner's habeas corpus petition. Respondent filed a timely notice of appeal.
 
 JURISDICTION
 
 15
 We questioned our jurisdiction over this petition because petitioner had been released from prison before he filed this petition. We were concerned that the restraints on petitioner's liberty were insufficient to satisfy the "in custody" requirement of 28 U.S.C. Sec. 2254. Thus, we ordered the parties to submit supplemental briefs on the jurisdictional issue.
 
 
 16
 We have been informed that petitioner is subject to the following restraints on his liberty. First, petitioner must report to the Washington Department of Corrections (DOC) within the first ten days of each month, by mailing in a monthly report. Second, petitioner must notify the DOC prior to any change of address or employment. Third, petitioner must obtain prior written permission from DOC before leaving the State of Washington. Fourth, petitioner must abide by firearm prohibitions. Fifth, petitioner must pay the remaining balance of restitution due to the victim. Finally, a violation of any of these terms, conditions or requirements can result in additional punishment, including incarceration. Taken together, we find that these restraints on petitioner's liberty are sufficient to satisfy the "in custody" requirement. Accordingly, we find that we have jurisdiction.
 
 DISCUSSION
 A. STANDARD OF REVIEW
 
 17
 We review de novo the district court's grant of a petition for writ of habeas corpus. Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir.1987), cert. denied, 488 U.S. 948 (1988). However, to the extent that this court is reviewing the district court's findings of fact, the "clearly erroneous" standard applies. Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986), cert. denied, 484 U.S. 870 (1987).
 
 B. MERITS
 
 18
 1. Was petitioner's claim that counsel should have located and interviewed Fewell procedurally barred?
 
 
 19
 Respondent argues that the district court erred by addressing on the merits petitioner's claim that counsel was ineffective because counsel failed to locate and interview Fewell. Respondent contends that the district court should not have heard the claim because the claim was held procedurally barred in the Washington Court of Appeals. See RCW 10.73.090(1).
 
 
 20
 Petitioner counters that respondent is confusing the ineffective assistance of counsel claim with the Brady claim. Both claims concern the bullets about which petitioner was not informed; but, the two claims are distinct. Petitioner explains that he is only pursuing the ineffective assistance of counsel claim, which was not procedurally barred.
 
 
 21
 We agree with petitioner. It does appear as if respondent is confusing petitioner's ineffective assistance of counsel claim with his Brady claim. Although the two are related, they are, in fact, distinct. The district court did not err by ruling on the ineffective assistance of counsel claim because it was not procedurally barred by the Washington courts.
 
 
 22
 2. Was counsel ineffective because counsel failed to locate and interview Fewell and because counsel failed to seek a continuance to gain more time to find Fewell?
 
 
 23
 To demonstrate ineffective assistance of counsel, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A deficient performance is one that is "outside the wide range of professionally competent assistance." Id. at 689. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.
 
 
 24
 Petitioner asserts that he received constitutionally ineffective assistance of counsel with regard to Fewell, a critical defense witness. First, counsel failed to locate and interview Fewell. Counsel unreasonably relied on an investigator who, according to petitioner, made only a few token attempts to locate Fewell. As evidence that the search for Fewell was inadequate, petitioner points to the testimony of several experts who testified that counsel and the investigator should have done more to find Fewell. In fact, two of the experts even identified the additional steps that should have been taken.
 
 
 25
 Petitioner also notes that, after the trial, he located Fewell in only 30 minutes simply by using the telephone. See also Montgomery v. Petersen, 846 F.2d 407, 414 (7th Cir.1988) (finding that counsel was not justified in not locating a witness because he did not have the witness's name or address where petitioner's wife and mother-in-law were able to find the witness).
 
 
 26
 Second, counsel failed to move for a continuance. Petitioner asserts that this error is twofold. First, given the importance of Fewell to petitioner's defense, counsel should have sought a continuance to gain more time to find Fewell. Second, counsel should have consulted with petitioner because the decision to seek a continuance is the client's, not the lawyer's.
 
 
 27
 Respondent counters that petitioner received effective assistance of counsel with regard to Fewell. First, counsel made an extensive effort to find Fewell. Second, counsel made a reasonable strategic decision to proceed to trial. Respondent emphasizes that counsel believed that he would be able to present Fewell's testimony by introducing a transcript of the 911 tape and that he could "catch the prosecution off guard." Respondent further urges that counsel could not have known that Fewell could give any other information about the case. Thus, respondent concludes, the district court erred by finding that counsel's assistance was ineffective. Such a finding, petitioner asserts, could only be based on hindsight. See Strickland, 466 U.S. at 689.
 
 
 28
 The district court found that counsel's attempts to locate Fewell were inadequate. The district court also found that counsel's choice not to move for a continuance would have been a reasonable strategic decision if counsel had made it after thorough investigation. Because counsel did not, the district court reasoned, counsel cannot say that he exercised "reasonable professional judgment." The district court observed, "Counsel's failure here was not so much in making the wrong decision regarding a continuance, but rather in failing to exercise proper supervision over the investigation to insure that it was timely and sufficiently broad to find Mr. Fewell in time for trial."
 
 
 29
 The district court's findings of fact are not clearly erroneous. In fact, they are supported by ample evidence. The decision not to interview a potentially corroborating witness is not a decision related to trial strategy, but rather is a decision related to adequate preparation for trial. See Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir.) (en banc), cert. denied, 498 U.S. 950 (1990). The deference generally granted to strategic choices of counsel is not justified when lack of adequate preparation is at issue. Id. at 831. Indeed, the Ninth Circuit has held that the failure to conduct a reasonable investigation constitutes deficient performance. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994) ("[C]ounsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client.") (emphasis in original) (internal citations omitted).
 
 
 30
 3. Was petitioner prejudiced by counsel's decision to proceed to trial without Fewell?
 
 
 31
 Petitioner contends that if counsel had spoken to Fewell, critical evidence relevant to his claim of self-defense could have been presented at trial. For example, the jury could have been told that bullets were found inside the restaurant that night. The presence of these bullets suggests that there was, in fact, more than one gun involved. Petitioner asserts that his self-defense case would have been substantially bolstered by the existence of a second gun. More importantly, the jury could have been told that Luksan and the gang had a reputation for violence because they often intimidated the other Burger King customers and had been seen on prior occasions armed with deadly weapons.
 
 
 32
 Petitioner further argues that Fewell's testimony was relevant and admissible as to whether petitioner reasonably believed, even if mistakenly, that he had to use deadly force to protect himself. Because a jury is entitled to consider all of the circumstances surrounding the incident to determine whether a defendant had reasonable grounds to believe that grievous bodily harm was about to be inflicted, State v. Wanrow, 88 Wash.2d 221, 235-36, 559 P.2d 548, 555-56 (1977), petitioner asserts that the jury was entitled to hear all of this evidence that Fewell could have provided. Furthermore, a defendant may show the victim's reputation for a violent disposition when self-defense is at issue, even if the reputation was unknown to the defendant at the time. Evid.R. 404(a)(2). And, a defendant may introduce specific acts done by the victim (e.g., carried knives) for the limited purpose of showing that the defendant's apprehension of danger was reasonable. Evid.R. 405.
 
 
 33
 Respondent counters that petitioner was not prejudiced because the evidence regarding the bullets was not admissible. Respondent asserts that this evidence was not admissible because petitioner was not aware of the bullets at the time of the shooting. Under Washington state law, facts not known to the defendant are not admissible to establish a self-defense claim. State v. Hoffman, 116 Wash.2d 51, 110, 804 P.2d 577, 608 (1991). Respondent concedes that Luksan's reputation for violence was admissible.
 
 
 34
 The district court found that petitioner was prejudiced by Fewell's absence. Specifically, the district court found that "[t]here is a high probability that evidence of the bullets, had it been presented at trial, would have made petitioner's claim of self-defense far more credible to the jury." Furthermore, the district court ruled, the evidence regarding the bullets was admissible because it "was very relevant to petitioner's subjective belief that he was in danger."
 
 
 35
 The district court's finding that petitioner was prejudiced is not clearly erroneous because it is supported by evidence. Clearly, the jury would have been more inclined to believe petitioner's self-defense argument had it heard Fewell's testimony regarding the reputation for violence of Luksan and the gang. Similarly, petitioner's case would have been strengthened if the jury had heard Fewell's testimony that Luksan and the gang had been seen armed with deadly weapons on previous occasions, and had frequently actively intimidated other Burger King customers.
 
 
 36
 4. Was counsel ineffective because he failed to interview and call Leadbetter and Holbrook who would have testified that petitioner always wore a bullet-proof vest?
 
 
 37
 Petitioner argues that counsel's failure to interview Leadbetter and Holbrook rendered his assistance ineffective. First, Leadbetter's testimony that petitioner was wearing his bullet-proof vest when Officer Turner came to investigate the burglary would have reestablished petitioner's credibility, which the prosecution had called into question. Second, the testimony of both women that petitioner always wears a bullet-proof vest would have refuted the prosecution's suggestion that petitioner donned the vest specifically to prepare for battle with his son. Petitioner asserts that because Leadbetter and Holbrook were not allowed to testify, the prosecution succeeded in painting "a distorted picture of [petitioner] [as] a violent[,] out-of-control vigilante."
 
 
 38
 Respondent counters that counsel's performance was not deficient because an attorney may reasonably limit his investigations based on information given to him by his client. Strickland, 466 U.S. at 691. Furthermore, counsel is not required to contact every witness, if the witnesses' testimony would be cumulative or immaterial. Griffin v. West, 791 F.2d 1578, 1580 (10th Cir.1986) ("An attorney's decision not to interview witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel....").
 
 
 39
 Again, the district court found that counsel could not have made a reasonable strategic decision because counsel did not first investigate. The district court explained, "Had counsel talked to the two women and then decided, based upon his informed judgment, that their testimony would not be useful to petitioner's defense, his choice could be defended as a reasoned one."
 
 
 40
 Again, the district court's finding is not clearly erroneous. Counsel does not dispute that he did not even speak with either woman. Strickland imposes an obligation to investigate. Strickland, 466 U.S. at 691; Sanders, 21 F.3d at 1456.
 
 
 41
 5. Was petitioner prejudiced by counsel's decision not to interview and call Leadbetter and Holbrook?
 
 
 42
 Petitioner contends that he was prejudiced by counsel's decision not to interview Leadbetter and Holbrook. First, his credibility was greatly diminished because Officer Turner's testimony questioning his veracity was not rebutted. Second, he was not able to refute the image painted by the prosecution that he donned the vest specifically for the confrontation that evening. Petitioner asserts that he was severely damaged by this image because it made his self-defense argument seem highly implausible.
 
 
 43
 Respondent counters that petitioner was not prejudiced because the testimony of Leadbetter and Holbrook "had nothing to do with the central issue at trial, which was whether [petitioner] acted reasonably in shooting Ryan Luksan."
 
 
 44
 Again, the district court's finding that counsel's decision not to interview or call these women to testify was "decidedly to petitioner's detriment" is not clearly erroneous. While counsel legitimately argues that such testimony may have made petitioner look like a "self-defense nut," there is also ample evidence to support the district court's finding.
 
 CONCLUSION
 
 45
 For the foregoing reasons, we affirm. The district court properly granted petitioner's habeas corpus petition.
 
 
 46
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3